■ In the Matter of the Estate of ANTOINETTE M. MURRAY, Deceased. DEBORAH A. SLEZAK, as Executor of ANTOINETTE M. MURRAY, Deceased, Respondent; RICHARD FOLMSBEE et al., Appellants. [853 NYS2d 680]—

Peters, J.

Antoinette M. Murray (hereinafter decedent) died in October 2005 leaving a will dated April 2002 which bequeathed $1,000 each to two churches, and the remainder of her estate to the ESF College Foundation, Inc. to create a scholarship fund named for herself and her predeceased husband. When petitioner, the attorney who drafted the will and presided over its execution, offered the will for probate, respondents, who are decedent's grandnieces and grandnephews, filed objections contending, among other things, that decedent lacked testamentary capacity and that the will was procured by undue influence. Following discovery, petitioner moved for summary judgment dismissing respondents' objections and admitting decedent's will to probate. Surrogate's Court granted petitioner's motion and respondents now appeal.

Respondents first contend that Surrogate's Court erred in granting petitioner's motion for summary judgment because a question of fact exists as to whether decedent possessed the requisite testamentary capacity when she executed the will. The initial burden of proving competency to execute the will rested with petitioner, who had to demonstrate that decedent "understood the consequences of executing the will, knew the nature and extent of the property being disposed of and knew the persons who were the natural objects of her bounty, and her relationship to them" (*Matter of Ruparshek*, 36 AD3d 998, 999 [2007]; *see Matter of Castiglione*, 40 AD3d 1227, 1228 [2007], *lv denied* 9 NY3d 806 [2007]). Respondents concede that Surrogate's Court properly found that petitioner met her initial evidentiary burden of proving that decedent possessed the requisite testamentary capacity. Such evidence included petitioner's own affirmation, in which she described in detail the events surrounding the drafting and signing of decedent's will, during which time she adjudged decedent to be competent,

as well as the concurrent work that petitioner performed in assisting decedent in decedent's capacity as the executor of her sister's estate, which included multiple financial transactions that were executed through June 2003. Petitioner also proffered the affidavits of subscribing witnesses Darcy Lewis and Bonnie Yetter, both of whom also testified that decedent was of sound mind and fully competent when she signed the subject will. Additionally, petitioner submitted the affidavit of William Busino, decedent's physician from 1983 until her death, who stated that there were no facts in decedent's medical records from 2002 which suggested incompetence and that, upon his personal recollection, throughout the entirety of 2002, decedent was competent to execute a will.* The burden thus shifted to respondents to raise a genuine issue of fact (see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Matter of Seelig, 13 AD3d 776, 777 [2004], lv denied 4 NY3d 707 [2005]).

To meet their burden, respondents proffered medical records of decedent, as well as numerous depositions from both party and nonparty witnesses. The medical records were unavailing inasmuch as the earliest report from a neurologist, dated October 2003, suggested that decedent's dementia was first diagnosed around April 2003, a full year after the will was executed. Similarly, the bulk of the deposition testimony suggested that decedent's dementia, while causing occasional episodes of confusion and forgetfulness prior to April 2002, accelerated markedly from late 2002 onward. Proof that decedent suffered from old age and chronic, progressive senile dementia when the will was executed is not inconsistent with testamentary capacity (see Matter of Williams, 13 AD3d 954, 957 [2004], lv denied 5 NY3d 705 [2005]; Matter of Buchanan, 245 AD2d 642, 644 [1997], lv dismissed 91 NY2d 957 [1998]). With respondents having failed to provide evidentiary support for their allegation that decedent was incompetent in April 2002, Surrogate's Court properly granted summary judgment in petitioner's favor (see Matter of Castiglione, 40 AD3d at 1228; Matter of Seelig, 13 AD3d at 777).

Respondents further contend that Surrogate's Court erred in granting summary judgment on the issue of whether decedent's will was the product of undue influence on the part of her husband. To establish undue influence, respondents were required to demonstrate that decedent was actually constrained to act against her own free will and desire by identifying the

---

* In fact, Busino stated that it was not until October 2004 that he ultimately determined that decedent was no longer competent to execute legal documents, which he did in response to an inquiry by petitioner.

motive, opportunity and acts allegedly constituting the influence, as well as when and where such acts occurred (*see Matter of Castiglione*, 40 AD3d at 1229; *Matter of Ruparshek*, 36 AD3d at 1000). Inasmuch as respondents' verified objections to probate alleged that decedent was unduly influenced by petitioner and her employees, while they argue now that such influence was wielded instead by her husband, this issue is not properly preserved for our review (*see Matter of Gates*, 120 AD2d 890, 892 [1986]; *see also Matter of Grawe*, 32 AD3d 1309, 1310 [2006]). In any event, respondents' evidence is insufficient to support their claim.

Mercure, J.P., Spain, Lahtinen and Malone Jr., JJ., concur. Ordered that the order is affirmed, without costs.

